# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH ROBINSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:06CV1380CAS/MLM** |
| | ) | |
| **JAMES PURKETT,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the First Amended Petition for Writ of Habeas Corpus filed by Kenneth Robinson ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted and an Amended Response. Doc. 7, Doc. 13. Petitioner filed a Traverse. Doc. 14. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 4.

## I.
## BACKGROUND

Petitioner was charged by indictment as follows: Count I, assault in the first degree, in that on or about Tuesday, June 26, 2001, at about 10:03 p.m., Petitioner knowingly caused serious physical injury to James Lee by shooting him and Count II, armed criminal action, in that Petitioner committed the felony of assault as charged in Count I by, with and through the use, assistance and aid of a deadly weapon. Resp. Ex. A at 6-7.

At Petitioner's trial Thomas Geile, owner of Tom's Auto Glass in Ferguson, Missouri, testified that his shop was a hang out for some men in the neighborhood including the victim, James

Lee, and Petitioner; that sometime in May or June 2001 Geile told Petitioner he did not want Petitioner on his property any longer because Petitioner had gotten into fistfights on the property; that on June 26, 2001, Petitioner came by Geile's shop and Geile told Petitioner to leave; that at about 10:00 p.m. on that date Geile, Lee, Mark Hardin, Bill McKenzie, and Petitioner were at the shop; and that Geile was inside and the others were standing in the alley talking. Resp. Ex. B at 184-87, 225-26. Further testimony at Petitioner's trial was that Petitioner was in an "upset state"; that Hardin went inside the building to get a beer when he heard Petitioner outside "hollering" and saying, "you're dead"; that Petitioner headed toward the parking lot; that Hardin told the other men that Petitioner had a gun and warned them not to let Petitioner get to his truck; that Geile went outside because he heard someone say that it was "heating up out back"; that Geile told Petitioner to get in his truck and go home; that Hardin suggested they call the police; that Hardin saw Petitioner take a gun out of the truck so he ducked down between Petitioner's truck and the building fearing that Petitioner would shoot him; that Geile was standing between Petitioner and the victim, Lee; that Petitioner then raised a gun and shot over Geile's arm; that Petitioner knocked Geile against the truck causing him to fall down; that Geile then yelled, "no Kenny, no," and the gun was fired; that after the first shot Lee was laying on the ground; that Petitioner then traveled twenty or twenty-five feet after the first shot and shot Petitioner four more times; and that Hardin then called 911. Resp. Ex. B at 190-92, 268-69, 271-77.

Detective Harry Dilworth of the Ferguson Police Department testified that he arrived at the scene and saw a white male laying on the ground bleeding; that Hardin directed him to where Petitioner was hiding; that Detective Dilworth discovered Petitioner hiding behind a Ford Explorer; that he placed Petitioner in custody; that there was a Smith and Wesson, .40 caliber, Model 4007

semiautomatic pistol with an empty clip on the hood of the truck; that Detective Dilworth found a gun permit and sales receipt in Petitioner's truck for a Smith and Wesson, Model 4007 with the same serial number as the gun found on the hood; that officers recovered five shell casings from the scene; and that the shell casings were an identical match to the five bullets fired from the weapon discovered at the scene. Resp. Ex. B at 126-33, 135. Lee testified that he was shot once in his thigh and three times in the abdomen; that paramedics took him to the hospital; that he was hospitalized for a week; and that he suffered shattered bones in his right leg and had five surgeries. Resp. Ex. B at 238-39, 241-42.

Petitioner testified in his own defense. He testified that he was never banned from Geile's shop; that Lee hit him on the head with a shovel; and that he shot Lee in self-defense. A jury found Petitioner guilty as charged and recommended that he be sentenced to fifteen years imprisonment on each count. Resp. Ex. B at 44-45. The court sentenced Petitioner to consecutive terms of fifteen years. Resp. Ex. B at 51.

Petitioner filed a direct appeal. Resp. Ex. C. The Missouri appellate court affirmed the judgment against Petitioner on September 23, 2003 and the mandate issued on November 12, 2003. Resp. Ex. F; Resp. Ex. G at 13. On February 6, 2004, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. G at 13. On June 1, 2004, counsel filed an amended post-conviction relief motion. Resp. Ex. G at 5-11. Petitioner filed an amended pro se post-conviction relief motion on September 20, 2004 and the motion court found that this motion was untimely. Resp. Ex. G at 14. The motion court denied the amended post-conviction relief motion which was filed by counsel. Resp. Ex. G at 12-21. Petitioner appealed the denial of post-conviction relief to the Missouri appellate court. Resp. Ex. I. By Order, dated November 1, 2005, the Missouri appellate court affirmed the judgment

against Petitioner and on November 23, 2005, it issued the mandate. Resp. Ex. K; Ex. M at 3.

On September 14, 2006, Petitioner filed his § 2254 Petition in which he raises the following issues:

**(1)** "The trial court erred and abused its discretion, or in the alternative, plainly erred, causing manifest injustice and/or a miscarriage of justice, when it sentenced Petitioner to consecutive fifteen year sentences;"

**(2)** Petitioner received ineffective assistance of counsel because counsel failed to object to the introduction of previous altercations involving Petitioner at the scene of the alleged assault;

**(3)** Petitioner received ineffective assistance of counsel because counsel failed to call, contact, or interview Kathy and Jimmy Mannino as witnesses;

**(4)** Petitioner received ineffective assistance of counsel because counsel failed to call Mitch Hardin, Steve Pruitt, and Kim Feld as witnesses.

**(5)** Petitioner received ineffective assistance of counsel because counsel failed to call Sal Saputo and Josephine McCarthy as witnesses to support Petitioner's claim of self-defense;

**(6)** Petitioner received ineffective assistance of counsel because counsel failed to object at sentencing to the consecutive sentences ordered by the court;

**(7)** Petitioner received ineffective assistance of counsel because counsel failed to call a ballistics expert as a witness to support Petitioner's claim of self-defense;

**(8)** Petitioner received ineffective assistance of counsel because counsel failed to call a medical expert as a witness to support Petitioner's claim of self-defense and show that Petitioner had injuries consistent with being struck in the head with a shovel;

**(9)** Petitioner received ineffective assistance of counsel because counsel failed to give Petitioner notice of the existence of a conflict of interest.

Doc. 1.

## II.

## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice"

the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the

federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The limitation period of § 2244(d)(1) runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Thus, the statute provides that any additional period during which the statute is tolled is added to the one-year period. Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000). While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled. Williams v. Bruton, 299 F.3d 981, 982 (8th Cir. 2002). The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending. Id. "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." Beery v.

Ault, 312 F.3d 948, 950 (8th Cir. 2002) (citing Peterson, 200 F.3d at 1203).  It is not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." Id. (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)).  The appeal of a post-conviction relief motion remains pending until the appellate court issues its mandate. Payne v. Kemna, 451 F3d 938 (8th Cir.2006) (holding that post-conviction proceedings in Missouri are not final until issuance of the mandate); Williams v. Bruton, 299 F.3d 981, 982-83 (8th Cir. 2002). See also  Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000) ("[O]ne-year limitations period for filing habeas petition was tolled while petitioner sought post-conviction relief in state court, from date when petitioner filed his motion for post-conviction relief up until date when Missouri Court of Appeals affirmed the denial of post-conviction relief.").  The Eighth Circuit explained, in Williams, 299 F.3d at  983, as follows:

> We stated in [Peterson v. Gammon, 200 F.3d 1202 (8th Cir.2000)] that a post-conviction application remains "pending" for the entire period during which a notice of appeal "would be timely, assuming such a notice was in fact filed." See id. at 1205.  ...  Peterson did not say that the statute of limitations was tolled only if the petitioner filed a timely appeal; it said that it was tolled if he or she did so. Although we have not answered the question directly, those circuit courts that have addressed it have concluded that the application is "pending" (and thus the limitations period is tolled) during the appeal period, even if the petitioner does not appeal. See Gibson v. Klinger, 232 F.3d 799, 803-04 & n. 1 (10th Cir.2000); Swartz v. Meyers, 204 F.3d 417, 420-24 (3d Cir.2000).

Respondent argues that Petitioner's § 2254 Petition for habeas relief should be denied because it is untimely.  In support of this contention Respondent states that the 1-year statute of limitations was not tolled for the ninety days Petitioner could have filed for a writ of certiorari with the United States Supreme Court after the denial of his direct appeal.  Nichols v. Bowersox, 172 F.3d 1068, 1072 (8th Cir. 1999), holds, however, that where a state prisoner does not file for a writ of certiorari

with the United States Supreme Court, the judgment against him becomes final upon the expiration

of that prisoner's time to file a petition for writ of certiorari. The 1-year statute of limitations,

therefore, did not run in Petitioner's case for the first ninety days after the Missouri appellate court

denied Petitioner's direct appeal as during this time Petitioner could have filed for certiorari with the

United States Supreme Court. The statute commenced to run on December 23, 2003 and ran until

Petitioner filed his pro se post-conviction relief motion on February 6, 2004. The 1-year statute was

again tolled on February 6, 2004, and did not commence to run until the mandate issued on the appeal

of Petitioner's post-conviction relief motion which date was November 23, 2005. See Payne, 451

F.3d 938. Petitioner filed his § 2254 Petition on September 14, 2006. As such, the court finds that

Petitioner's § 2254 Petition was timely filed.

Respondent also asserts that Petitioner has procedurally defaulted Grounds 2 and 4 through

9.[1] Petitioner did not raise the issues which he raises in Grounds 2 and 4 through 9 in either his direct

appeal or in the appeal of his post-conviction relief motion. As such, the court finds that Petitioner

has procedurally defaulted Grounds 2 and 4 through 9. To the extent that Petitioner suggests his

procedural default should be excused, he argues that his trial counsel deliberately abandoned the

---

[1]     Respondent argued procedural default and addressed the merits of Petitioner's
claims in the Amended Response. Petitioner contends that Respondent waived all arguments other
than timeliness because the only issue addressed in the initial Response to Show Cause was
timeliness. The case law does not support such a conclusion. See e.g., Cagele v. Norris, 474 F.3d
1090, 1098 (8th Cir. 2007) (holding that a court may sua sponte consider whether a habeas
petitioner has procedurally defaulted an issue); King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001)
(holding that a federal court has "discretion to consider an issue of procedural default sua
sponte"). See also Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990) ("The failure to respond
to claims raised in a Petition for Habeas Corpus does not entitle the petitioner to a default
judgement."). Moreover, Petitioner was given the opportunity to respond to Respondent's
Amended Response.

defaulted claims.[2]  Doc. 1 at 22.  First, Petitioner could have raised claims of ineffective assistance of counsel based on trial counsel's alleged abandonment of claims in a post-conviction relief motion and subsequently on appeal. See Mo. Rule 29.15. Second, to the extent that post-conviction counsel and post-conviction appellate counsel did not raise the defaulted issues, there is no right to effective assistance of post-conviction relief counsel. Pennsylvania v. Finely, 481 U.S. 551, 557 (1987); Oxford v. Delo, 59 F.3d 741, 748 (8th Cir. 1995); Lowe-Bey v. Groose, 28 F.3d 816, 820 (8th Cir. 1994) (citing Coleman v. Thompson, 501 U.S. 722, 752-55 (1961)).  Alleged ineffectiveness of post-conviction counsel does not "supply the required cause to excuse procedural default."  Brown v. Luebbers, 344 F.3d 770, 775 (8th Cir. 2003). The court finds, therefore, that Petitioner has failed to suggest cause to excuse his procedural default of Grounds 2 and 4 through 9.  As such, the court finds that Petitioner's Grounds 2 and 4 through 9 should be dismissed.

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).  In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  "'Federal law, as determined by the

---

[2]    Petitioner was put on notice in Respondent's Amended Response to the Order to Show Cause that Respondent was taking the position that Petitioner's Grounds 2 and 4 through 9 are procedurally defaulted.  Nonetheless Petitioner did not directly address this issue in his Traverse.

Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" <u>Evenstad v. Carlson</u>, Slip Op. 05-1467 at 6 (8th Cir. Nov. 30, 2006). "To obtain habeas relief, [a habeas petitioner] must be able to point to the Supreme Court precedent he thinks the [] state courts acted contrary to or applied unreasonable." <u>Id.</u> at 7 (citing <u>Buchheit v. Norris</u>, 459 F.3d 849, 853 (8th Cir. 2006); <u>Owsley v. Bowersox</u>, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)." <u>Id.</u> at 8. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). <u>Id.</u> at 7-8 (citing <u>Tunstall v. Hopkins</u>, 306 F.3d 601, 611 (8th Cir. 2002)). <u>See also</u> <u>Carter v. Kemna</u>, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." <u>Id.</u> at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may

12

grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529

13

U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

# IV.
## DISCUSSION

**Ground 1 - "The trial court erred and abused its discretion, or in the alternative, plainly erred, causing manifest injustice and/or a miscarriage of justice, when it sentenced Petitioner to consecutive fifteen year sentences":**

Petitioner contends in Ground 1 that the court erred and/or caused manifest injustice when it sentenced him to consecutive terms of fifteen years rather than concurrent terms. In support of this claim, Petitioner argues that the trial court erroneously stated that Petitioner would served thirteen or thirteen and a half years whether or not he received concurrent or consecutive sentences. Respondent contends that Petitioner's Ground 1 is not cognizable pursuant to habeas review. Doc. 13 at 8. [3]

---

[3] Upon addressing the issue of Ground 1 the Missouri appellate court held that Petitioner did not preserve the issue of Ground 1 at sentencing; that, therefore, the court could only review his claim for plain error; that to prevail on plain error review Petitioner was required to establish the manifest injustice; and that Petitioner had not established the extraordinary

Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).

In Petitioner's Ground 1 he contends that the court erred in sentencing him because the court misunderstood the consequences of consecutive sentences. The State court did not address the merits of Petitioner's Ground 1. Resp. Ex. F. Also see n. 2, above. First, the court notes that under Missouri law a trial court has discretion as to whether sentences imposed for armed criminal action and the underlying felony are to be concurrent or consecutive. See State v. Olney, 954 S.W.2d 698,

_____

circumstances to justify plain error review. Resp. Ex. F. Where a state court declines to engage in plain error review a habeas claim is procedurally defaulted for purposes of federal review. Joubert v. Hopkins, 75 F.3d 1232, 1242 (8th Cir. 1996). See also Taylor v. Norris, 401 F.3d 883, (8th Cir. 2005); Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), cert. denied, 543 U.S. 967 (2005) (holding that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error"). Thus, Petitioner's Ground 1 was procedurally defaulted. Moreover, when a state court engages in plain error review and reviews an issue only on state-law grounds procedural default is not cured. Hanes v. Dormire, 240 F.3d 694, 701 (8th Cir. 2001). Respondent does not argue that Petitioner procedurally defaulted Ground 1. Petitioner, therefore, was not put on notice that such an argument is applicable to Ground 1. The court will, therefore, address only the argument made by Respondent.

700 (Mo. Ct. App. 1997). Missouri's armed criminal action statute, Mo. Rev. Stat. § 571.015, provides that "[t]he punishment imposed pursuant to this subsection shall be in *addition* to any punishment provided by law for" the underlying crime. (emphasis added). Thus, Petitioner's receiving consecutive rather than concurrent sentences was consistent with Missouri law. Second, "'federal courts have no right to review any sentence of a state court which does not exceed the statutory maximum sentence which may be imposed under the laws of the state' although there are exceptions such as 'where the principle of <u>Gideon v. Wainwright</u>, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), [is] involved.'" <u>Kenny v. Swenson</u>, 458 F.2d 680, 683 (8th Cir. 1972) (per curiam) (quoting <u>Stevens v. Warden, Maryland Penitentiary</u>, 382 F.2d 429, 433 (4th Cir. 1967). <u>See also</u> <u>Niemann v. Parratt</u>, 596 F.2d 316, (8th Cir. 1979) (holding that "rules of sentencing adopted by state courts do not ordinarily raise constitutional issues cognizable in habeas corpus proceedings," although there are exceptions to this rule). In particular, the Eighth Circuit found no issue of constitutional magnitude where a habeas petitioner alleged that he was erroneously sentenced by the trial judge because of a misunderstanding on the part of the judge. <u>Kenny</u>, 458 F.2d at 683. The court finds, therefore, that Petitioner in the matter under consideration has not raised an issue of constitutional magnitude and that the issue he raises in Ground 1 is not cognizable pursuant to federal habeas review. As such, the court finds that Petitioner's Ground 1 should be dismissed.

**Ground 3** - **Petitioner received ineffective assistance of counsel because counsel failed to call, contact, or interview Kathy and Jimmy Mannino as witnesses:**

In support of Ground 3 Petitioner contends that Kathy and Jimmy Mannino would have testified that Petitioner was struck in the head with a shovel prior to the shooting and that this testimony would have established that the shooting occurred in self-defense. Petitioner further

contends that Kathy and Jimmy Mannino testified at the evidentiary hearing that they were told by Bill McKenzie that the victim attacked Petitioner with a shovel and that they told this to Petitioner's trial counsel.

Upon addressing the issue of Ground 3 the Missouri appellate court held as follows:

At the evidentiary hearing, movant did not testify. Edward Laner testified only that he accompanied movant on a visit to movant's counsel's office to help movant explain that he did not want to plead guilty, but neither attorney was in. Lori Pilla, one of movant's sisters, testified that she told both counsel that they needed to call James "Jimmy Mannino, Mary Kathleen "Kathy" Mannino, and William "Bill" McKenzie because they each had information that would help movant.

Mr. Mannino, movant's brother-in-law, testified that after he heard about the assault, he went to the scene where Mark Hardin told him that he saw the victim hit movant with a shovel, which caused movant to retrieve his gun from his truck. Mr. Mannino testified that he was never contacted by defense counsel to testify to this, although he was willing and able to so testify. Mrs. Mannino, movant's other sister, testified that 36 hours after the assault she telephoned Mr. McKenzie who told her that the victim hit movant with a shovel. She also testified that she was ready and willing to testify but was never contacted by defense counsel.

Bradford Kessler, one of movant's two trial attorneys, testified that all of the eyewitnesses, including Mr. Hardin and Mr. McKenzie, testified at trial, and none of them testified that movant hit the victim with a shovel. Mr. Kessler testified that only movant claimed to have been hit by a shovel, and no shovel was recovered at the scene. The only shovel showed up in a photograph of the trunk of movant's truck. No one ever informed Mr. Kessler that Mr. Mannino or Mrs. Mannino would have testified that Mr. McKenzie was lying.

Movant's other trial attorney, Daniel Diemer, who was Mr. Kessler's partner, testified that he had telephoned Mr. Mannino and that Mr. Mannino said that he had not heard about the shovel from Mr. McKenzie or Mr. Hardin, but it was something he had heard in the neighborhood. Mr. Diemer also testified that the only shovel involved in the case was the one in movant's truck. No one told Mr. Diemer that Mrs. Mannino had a conversation with Mr. McKenzie in which Mr. McKenzie told her that the victim had hit movant with a shovel. Movant's other sister, Ms. Pilla, had told him what Mrs. Mannino was going to say, and it was not helpful to the defense.

The trial transcript confirms that none of the eyewitnesses testified that the victim hit movant with a shovel. Mr. Hardin testified that the victim had no kind of weapon in his hand. Mr. McKenzie testified that he never saw the victim hit movant with a shovel. The victim also denied hitting movant with a shovel or any weapon.

In its judgment denying the motion, the motion court found that Mr. and Mrs. Mannino's testimony was not credible, that the defense had been attempting to uncover any information to support movant's defense, and that defense counsel would have called Mr. and Mrs. Mannino if they had heard the statements about the victim having a shovel from Mr. McKenzie. In addition, the court observed that counsel could not have called Mr. and Mrs. Mannino simply to testify to unidentified hearsay.

Our review of the motion court's judgment is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k). ...

...

At the evidentiary hearing, both of movant's trial attorneys testified that they were never told that Mrs. Mannino had any information helpful to the defense. Movant did not testify and none of his witnesses testified that they told either of movant's trial counsel that Mr. McKenzie had made a statement about a shovel to Mrs. Mannino. Although Ms. Pilla testified that she told one of the attorney's that Mrs. Mannino had helpful information, counsel testified that the information Ms. Pilla gave him about Mrs. Mannino's testimony was not helpful. The motion court was free to disbelieve Ms. Pilla's testimony. <u>Teaster v. State</u>, 29 S.W.3d 858, 860 (Mo. App. 2000). Further, the trial court found both Mr. Mannino and Mrs. Mannino incredible. We defer to this finding of credibility. <u>Id.</u>

Movant has the burden of proving his claim by a preponderance of the evidence. Rule 29.15(i). For claims of ineffective assistance of counsel, movant is faced with a heavier burden arising from the presumption that counsel is competent. <u>Sanders v. State</u>, 738 S.W.2d 856, 857 (Mo. banc 1987). To prevail on a claim of ineffective assistance of counsel, movant must show that his attorney failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and that movant was thereby prejudiced. <u>Strickland v. Washington</u>, 466 U.S. 668, 678, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Movant did not show that trial counsel were ineffective for failing to call, contact or interview Mrs. Mannino.

Criminal defense lawyers have no duty to interview every person who

> may possibly have overheard a contradictory statement of a state's witness made at some later date or at some different place. ...

> State v. Twenter, 818 S.W.2d 628, 640 (Mo. banc 1991). A defense attorney may rely on his or her client to identify the witnesses to be interviewed. Id. "Unless there is some showing that counsel learned of the alleged evidence of an inconsistent statement, before or during trial, ineffectiveness of for failing to investigate or produce that evidence has not been established." Id. In this case there was no credible evidence that counsel learned of evidence of an inconsistent statement by Mr. McKenzie before or during trial.

> The motion court did not clearly err in denying the motion for post-conviction relief.

Resp. Ex. K at 3-6.

Pursuant to Williams, 529 U.S. 412-13, the court will consider federal law applicable to the issue of Petitioner's Ground 3. Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

In regard to the calling of witnesses and investigation, federal law provides that counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d

21

1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses ... may be a matter of trial strategy. Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994). "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Strickland, 466 U.S. at 590.

Upon considering whether Petitioner received ineffective assistance of counsel because counsel did not call Kathy or Jimmy Mannino, the Missouri appellate court considered the testimony at the evidentiary hearing and adopted the credibility findings of the motion court. In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings

of the state courts. <u>Ashker v. Class</u>, 152 F.3d 863, 867 (8th Cir. 1998) (citing  28 U.S.C. §

2254(e)(1); 28 U.S.C. § 2254(d)(2);  <u>Smith v. Jones</u>, 923 F.2d 588, 590 (8th Cir. 1991)).  <u>See</u> <u>also</u>

<u>Laws v. Armontrout</u>, 863 F.2d 1377, 1381 (8th Cir. 1988).  The presumption applies to basic,

primary or historical facts and the inferences that can properly be drawn regarding them. <u>See</u> <u>Case</u>

<u>v. Mondragon</u>, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing <u>Marshall v. Lonberger</u>, 459 U.S. at

431-32; <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 341-42 (1980)).  "Questions of witness credibility are

usually considered to be issues of fact." <u>Id</u>.(citing <u>Brown v. Allen</u>, 344 U.S. 443, 506 (1953)).

The appellate court also considered the testimony at trial. As noted by the Missouri appellate

court, none of the eyewitnesses testified that the victim hit Petitioner with a shovel, including

McKenzie and Hardin.  Indeed,  Hardin testified that the victim did not have a weapon in his hand.

Upon considering whether Petitioner received ineffective assistance of counsel the Missouri appellate

court applied the two-pronged test  articulated by the Supreme Court in <u>Strickland</u> for such a

determination and concluded that Petitioner had not met his burden under <u>Strickland</u> to establish both

that his attorney failed to exercise the customary skill and diligence of a reasonably competent

attorney under similar circumstances and that Petitioner was thereby prejudiced. The court finds,

therefore, that the decision of the Missouri appellate court in regard to the issue of Petitioner's

Ground 3 is not contrary to federal law and that it is a reasonable interpretation of federal law. <u>See</u>

<u>Strickland,</u> 466 U.S. at 590.  The court further finds that the Missouri appellate court reasonably

applied federal law to the facts of Petitioner's case.  As such, the court finds that Petitioner's Ground

3 is without merit and that it should be dismissed.

**V.**

**CONCLUSION**

For the reasons stated above, the court finds that Petitioner Grounds 1 is not cognizable pursuant to federal habeas review; that Petitioner has procedurally defaulted Grounds 2 and 4 through 9; and that Ground 3 is without merit. As such, the court finds that Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED**; Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler

MARY ANN L. MEDLER

UNITED STATES MAGISTRATE JUDGE

Dated this <u>4th</u> day of  June, 2007.